UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRAI CAMARILLO,

          Plaintiff,

v.                                    Case No.  8:12-cv-355-T-33TBM

CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,[1]

          Defendant.

_____/

## REPORT AND RECOMMENDATION

     The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

### A.

     Plaintiff was thirty-one (31) years of age at the time of his administrative hearing.  He stands 5' 7" tall and weighed between 255 and 270 pounds.  Plaintiff has a sixth grade education.  Plaintiff reported past work as a laborer and fruit picker.  Plaintiff applied for disability benefits and Supplemental Security Income in June 2010, alleging disability as of

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

December 31, 2008, by reason of emotional difficulties, illiteracy, depression, back pain, and post traumatic stress disorder.  Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified on his own behalf.  Additionally, a vocational expert was called by the ALJ**.**

At the hearing, Plaintiff initially was unable to remember much about his past work. He recalled working some, but he could not recall the names of his employers.  He remembered mowing grass, working for a trash guy, and making pizzas.  By his description, the jobs were all short term.  He was unable to explain how he earned $9,000 in 2008.

Plaintiff likes to read, but is unable to read very well.  He is able to read children's books to his young daughter, but sometimes has difficulty with them.  He cannot write very well either.

He has had a couple of car accidents.  From the accidents, he injured his back, neck and feet, "everywhere."  After he was injured, he did not go back to work.  Currently, he has pain is in his upper back, shoulders, wrists, ankles and hips.  He also experiences a burning sensation on the inside of his right thigh.  His feet hurt from being swollen.  Due to the pain in his feet, he tries not to walk too much.  However, when he tries sitting, his feet also hurt.  He is unable to sit and watch an entire television program.  He usually switches the channel when it goes to commercial because it makes him feel anxious.  With his knees, every once in a while, there's a clicking sound.  Every morning when he wakes up he needs to warm up his

hips by moving them around because they are hurting.  His right leg hurts all the time.  His hands also hurt when he grabs things; they feel like they're going to lock up.  He has pain in his elbow; every morning he needs to pop them.

He is unable to lift anything.  For example, his one-year-old daughter is too heavy for him to lift.  He does not like to go shopping because he has to walk.  If he goes, he'll get the cart and drive around the store.  He stands every once in a while, in particular, when he needs to change positions.  He uses a quad-cane, although he was prescribed a walker by Dr. Patel.  He does not use a walker because he does not want people to make fun of him.  (R. 41-57).

The ALJ next took testimony from David Pigue, a vocational expert (VE).  The initial hypothetical propounded to the VE assumed an individual who can perform the exertion demands of light work, but with only occasional climbing of ladders, ropes and scaffolds; occasional stooping and crouching; but frequent climbing ramps and stairs, balancing, kneeling, and crawling; and able to perform simple repetitive tasks in a job that would not require a lot of reading and writing beyond a sixth grade level.  In response, the VE opined that such an individual would not be able to perform Plaintiff's past work, but could perform the work of a ticket taker, cleaner/housekeeper, landscape specialist, and agricultural produce sorter.  Assuming the individual's ability to do math was equivalent of a 2.7 grade level, the VE opined that such a limitation would not have an impact on the aforementioned jobs.  If the individual's education background was marginal education as opposed to limited education, the VE opined that such would not have an impact on the jobs available.

3

On additional questioning by the claimant's attorney, assuming the added limitation that the individual would have restrictions in the repetitive use of his hands for up to six hours during the day, and require a sit/stand/walk at will option, the VE opined that none of the jobs would be available.  (R. 58-65).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.  Additionally, Plaintiff's date last insured for disability benefits was March 31, 2009.

By decision of September 9, 2011, the ALJ determined that while Plaintiff has severe impairments related to depression, anxiety disorder, obesity, opioid dependence, and mild disorders of the spine, he nonetheless had the residual functional capacity to perform a restricted range of light exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 23-33). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act,

4

is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

5

were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002);

*McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff: (1) the ALJ

erred by failing to consider all of Plaintiff's severe impairments in her assessment of

Plaintiff's residual functional capacity because she failed to account for any limitations caused

by Plaintiff's carpal tunnel syndrome and degenerative joint disease; and (2) the ALJ erred by

failing to include her findings that Plaintiff suffered from moderate limitations in

concentration, persistence, and pace in her residual functional capacity assessment and in her

questioning of the vocational expert.  (Doc. 14).

By his first claim, Plaintiff argues that the ALJ erred in failing to address his carpal

tunnel syndrome (CTS).  As a consequence, the residual functional capacity assessment (RFC)

is not based on substantial evidence because it fails to account for the condition and

limitations caused thereby.[2]  Thus, although the ALJ noted a nerve conduction study with

abnormal results indicating bilateral CTS, she failed to mention the medical problems with his

hands in discussing his severe impairments or account for any limitations in using his hands.

Accordingly, a remand for consideration of all the evidence is warranted.  (Doc. 14 at 22-23).

---

[2]In the statement of issues, Plaintiff also argues that the ALJ erred by failing to account
for any limitations caused by Plaintiff's degenerative joint disease with radiculopathy in the
extremities.  (Doc. 14 at 3).  However, other than this initial statement, Plaintiff fails to argue
this issue, nor present medical support for this argument, and thus, I find the issue waived.
*See* (Doc. 13 at 1-2).  In any event, my review of the medical evidence offers little to no
support for this claims.  As the ALJ noted (R. 29), clinical and objective findings, including
three MRIs, do not support more than mild limitations from the conditions in his neck and
back.

In response, the Commissioner argues that the ALJ fully considered Plaintiff's fine motor skills.  While the ALJ noted that a nerve conduction study was abnormal, Plaintiff had no subsequent clinical correlation or treatment for such condition.  Indeed, in the same month that Plaintiff had the nerve conduction study, Plaintiff was found to have normal grip strength and power, and no abnormalities during a motor examination.  Both prior to and after the September 2010, the month the nerve conduction study was conducted, Plaintiff had no strength or motor deficits and no indication of carpal tunnel syndrome.  As the ALJ noted, apart from the nerve conduction study, which requested clinical correlation, there was no indication that Plaintiff had any manipulative limitations.  Thus, the ALJ property determined that Plaintiff did not have any manipulative limitations.  (Doc. 15 at 7-8).

After careful consideration of Plaintiff's testimony in light of the medical evidence, I find no error requiring a remand on this claim.  First, it is worth noting that while Plaintiff criticizes the ALJ's failure to include CTS in his RFC assessment, Plaintiff wholly fails to identify limitations caused by the condition which are supported by the medical record and ignored by the ALJ.  Moreover, while the medical record supports an impression for CTS, it otherwise does not support any clinical findings for significant limitations in the function of Plaintiff's hands.

Here, Plaintiff testified to a number of physical problems he was experiencing.  (R. 54-55).  Regarding his hands, the sum total of his testimony was that "[t]hey kind of hurt, they feel like when I grab stuff; I got to grab it it feels like it's going to lock up on me or one of them is going to lock up on me."  (R. 55).  The medical evidence is equally vague.  Plaintiff was seen for a neurological opinion by Dr. Harish Patel, M.D., in September 2010.  Plaintiff

made numerous complaints of pain in his back, feet and legs, and as for his hands, he claimed "tingling and numbness.' (R. 341). However, beyond Plaintiff's complaints, the doctor's findings offer little support and in fact appear to wholly contradict Plaintiff's claims of a limiting condition in his hands. Indeed, physical findings for the neck and extremities reveal findings of 5/5 grip strength and good fine motor coordination. (R. 343). And, beyond noting a decrease pin prick in hands and feet, (R. 343), there are no findings to support a limiting condition in the hands. As Dr. Patel's report reveals, numerous tests were ordered. (R. 344). The nerve conduction study of the upper extremities gave an impression for possible CTS in the right wrist, but nothing concerning the left wrist. (R. 345). In full, the doctor stated, "NCV abnormal indicative of bilateral CTS, and ulnar entrapment neuropathies at both elbows and right wrist" and as for his recommendation, he stated, "[c]linical correlation recommended." (R. 345). As urged by the Commissioner, Plaintiff has not demonstrated clinical correlation, nor further treatment for CTS.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

Here, I conclude that the ALJ's physical RFC assessment was based on review of the whole of the record and more particularly, that Plaintiff does not demonstrate limitations in

8

his hands from this record which were overlooked by the ALJ.[3]  Even assuming the diagnosis

for CTS, the mere diagnosis of a condition is not enough.  *See Moore v. Barnhart*, 405 F.3d

1208, 1213 n. 6 (11th Cir. 2005).  Absent such a demonstration of limitations, Plaintiff is not

entitled to relief on the first claim.

Plaintiff next argues that the ALJ's RFC assessment, as well as the hypothetical

question to the VE, failed to account for his moderate deficits related to concentration,

persistence, and pace.  And, while the ALJ limited Plaintiff to "simple and repetitive tasks"

where "the main component of jobs must not require reading or writing beyond the sixth

grade level," such did not expressly or implicitly account for his moderate limitations in

concentration, persistence and pace.  Moreover, there is no medical evidence to support the

conclusion that Plaintiff can meet the demands of simple, routine, and repetitive tasks and

accordingly, the ALJ's mental RFC findings and his questions to the VE's are insufficient

such that the VE's testimony cannot provide the necessary substantial evidence to uphold the

vocational decision  (Doc. 14 at 23-25).

In opposition, the Commissioner argues that the ALJ properly accounted for

Plaintiff's mental limitations in his mental RFC assessment and with the questions to the VE.

She urges that such is evidenced by the ALJ's reliance on Dr. Stainback's opinion that

Plaintiff is able to meet the basic mental demands of work on a sustained basis despite

moderate limitations noted in his assessment.  (R. 31, 393).  Because the medical evidence

------

[3]As argued by the Commissioner, there are a number of record cites supporting the
ALJ's conclusion of no motor or strength deficits before and after the alleged onset date.  *See*
(R. 299-300, 303-04, 314, 411, 421, 435).

demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, substantial evidence supports both the ALJ's mental RFC finding and the vocational decision.  (Doc. 15 at 8-11).

As the decision reflects, the ALJ determined from the medical and other record that Plaintiff's depression and anxiety were severe conditions as such is defined by the Act.  In assessing the severity of these conditions, the ALJ concluded they imposed mild difficulties in activities of daily living and social functioning and a moderate difficulties in concentration, persistence and pace.  (R. 26-27).  As such affected his capacity for work, the ALJ's mental RFC assessed that Plaintiff could still perform simple and repetitive tasks in jobs, the main components of which, did not require reading or writing beyond the sixth grade level.  (R. 27). The ALJ employed that same limitation in his hypothetical to the VE.  (R. 59).

By Plaintiff's contention, the limitation to simple and repetitive tasks with the reading/writing limitation does not account for moderate limitations in concentration, persistence or pace and any vocational opinion based thereon does not provide substantial evidence to support the ALJ's decision.  By the Commissioner's argument, the limitation is adequate when it is read in the context of the opinions of Dr. Stainback, who found such moderate limitations, but also concluded that Plaintiff could perform simple, repetitive tasks and meet the demands of work on a sustained basis despite his limitations.  In support of their respective arguments, both parties cite to *Winschell v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011) and *Jarrett v. Commissioner of Social Security*, 422 F. App'x 869 (11th Cir. 2011).

10

Case law in this Circuit clearly dictates that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Winschell*, 631 F.3d at 1180 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). In *Winschell*, the court reversed the decision and remanded for further proceedings because although the ALJ assessed the claimant with moderate limitations in concentration, persistence and pace, the hypothetical to the VE neither expressly nor implicitly accounted for such impairment. In its subsequent unpublished opinion in *Jarrett*, the Eleventh Circuit ruled that the ALJ's hypothetical, which expressly assumed a limitation for concentration "for brief periods of time," was adequate to account for the ALJ's finding of a moderate limitation in concentration, persistence and pace. 422 F. App'x at 871. Significantly, the court also concluded that the ALJ's hypothetical restriction "to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Id.* at 872. "[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (quoting *Winschell*, 631 F.3d at 1181) .

11

Here, neither the ALJ's mental RFC assessment nor his hypothetical to the VE made express mention of any limitation in concentration, persistence or pace.  Moreover, by my consideration, whether such is properly inferred in light of the limitation posed by the ALJ and the medical record presents a close call.  However, on this record and in light of *Jarrett*, I am obliged to conclude that the ALJ's hypothetical question to the VE implicitly accounted[4] for the limitation when considered in the light of the medical record which supports that despite such moderate limitation in concentration, persistence and pace, Plaintiff could perform simple and repetitive work on a sustained basis.

As noted, the court in *Jarrett* determined that the ALJ's hypothetical to the VE both expressly and implicitly accounted for Jarrett's moderate limitation in concentration, persistence and pace.  Thus, the ALJ's express reference to a concentration limitation was adequate, as was the limitation to "simple and routine tasks" where the medical record otherwise supported that the claimant could work despite her moderate limitation in concentration, persistence and pace.  *See Jarrett*, 422 F. App'x at 872.  That is, where the evidence from two nonexamining sources found the claimant capable of simple work despite her moderate limitation for concentration, persistence and pace, the ALJ's hypothetical limitation for simple and routine tasks was adequate to implicitly account for the moderate limitations and supported the vocational decision.  As a consequence, the *Jarrett* court found the vocational decision of the ALJ supported by substantial evidence.

---

[4]The Commissioner's contention that this limitation was explicitly accounted for is incorrect.

Similarly, Plaintiff's medical record contains the opinion of a nonexamining doctor which supports the conclusion that Plaintiff could still perform simple and repetitive work on a sustained basis despite his moderate limitations.  Thus, in December 2010, a nonexamining psychologist, Dr. Robert Stainback, Ph.D., concluded a mental RFC with findings of moderate limitations in several areas of mental activity including concentration and persistence, and the following conclusions:

> MRFC:
>
> A review of the objective and subjective MER indicates the following assessment of the mental residual functional capacity:
>
> Cl retains capacity to remember work locations and procedures and understand and remember short, simple instructions.  Understanding, remembering and carrying out detailed instructions may be more difficult for cl due to probable fluctuations in stress tolerance.  Cl retains ability to carry out short and simple instructions.  Cl likely has moderate limitations in ability to maintain attention and concentration for extended periods.  Cl's ability to maintain a consistent work pace and adhere to schedules remains intact.  Cl can make simple work related decisions and sustain work activities without being overly distracted by coworkers or requiring special supervision. Cl's social and adaptive capacities are generally retained; however, ability to interact appropriately with the public, to maintain socially appropriate be-havior, and to adapt to change may be intermittently compromised.  In sum, cl retains the ability to perform at a level reflected by the MRFC assessment.
>
> Claimant retains the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at higher levels in spite of the moderate limitations noted above.  Claimant is able to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified MDIs.

(R. 393).[5]  In light of these findings, I conclude that the ALJ's mental RFC and hypothetical limitations for simple and repetitive work with reading/writing limitations at the sixth grade

_____

[5]As noted by the ALJ, the record does not contain opinions by any treating or examining doctors who imposed limitations inconsistent with those he imposed.

level implicitly account for Plaintiff's moderate limitation in concentration, persistence and pace.  And, in light of the VE's testimony that numerous jobs were available to Plaintiff despite such limitations, substantial evidence supports the ALJ's mental RFC assessment and her vocational decision.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
20th day of August 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
United States District Judge
Counsel of Record